◂Return to Full

**LexisNexis™ Academic**

FOXBOROUGH SAVINGS BANK, Plaintiff v. SAHAG S. PETROSIAN, DOROTHY L. PETROSIAN, SIMS AND SIMS, P.C., INTERNAL REVENUE SERVICE, and COMMONWEALTH OF MASSACHUSETTS (DEPARTMENT OF REVENUE), Defendants

CIVIL ACTION NO.99-11435-REK

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

**84 F. Supp. 2d 172;** 1999 U.S. Dist. LEXIS 21456; 99-2 U.S. Tax Cas. (CCH) P50,985; 84 A.F.T.R.2d (RIA) 7180

October 29, 1999, Decided

**DISPOSITION:** [**1] Motion to Deposit Surplus Funds (Docket No. 4) allowed in part.

**COUNSEL:** For FOXBOROUGH SAVINGS BANK, Plaintiff: Kevin J. Sullivan, Law Offices of Kevin J. Sullivan, Braintree, MA.

For SAHAG S. PETROSIAN, DOROTHY L. PETROSIAN, Defendants: John P. Vignone, Wrentham, MA.

For INTERNAL REVENUE SERVICE, Defendant: Carina J. Campobasso, Trial Attorney, U.S. Department of Justice, Washington, DC.

For INTERNAL REVENUE SERVICE, Defendant: Barbara Healy Smith, United States Attorney's Office, Boston, MA.

**JUDGES:** Robert E. Keeton, United States District Judge.

**OPINIONBY:** Robert E. Keeton

**OPINION:** [*172] Memorandum and Order

October 29, 1999

I.

Foxborough's Motion for Leave to Deposit Surplus Funds (Docket No. 4, filed September 3, 1999) seeks leave to deposit a sum in the registry of this court. Plaintiff Foxborough Savings Bank ("Foxborough") alleges in the complaint in this case that it foreclosed on a mortgage and determined that it had in its possession funds in excess of the amount necessary to satisfy the obligations of the debtor to Foxborough. It asks the court to treat this as an interpleader action because conflicting claims are made by the defendants to the funds in Foxborough's possession. [**2]

Foxborough's pending Motion and supporting papers allege that it is holding $ 83,693.49 as the balance

in excess of the amount required to satisfy the debt to Foxborough under the mortgage and that it wishes to retain $ 2,142.05 from the sum for legal fees and costs of interpleader and place in the registry of the court the remaining $ 81,551.44. As clarified at the Case Management Conference of October [*173] 22, 1999, Foxborough's position is that it is not willing to place the entire $ 83,693.49 in the registry of the court unless ordered to do so.

No party disputes that regardless of what amount Foxborough tenders to the Clerk for deposit, Foxborough will be free to argue to the court that some part of the amount it deposits should be paid, before termination of this case, to its attorney as legal fees for work performed on its behalf in this interpleader action.

**II.**

All parties were represented by counsel at the Case Management Conference of October 22, 1999, except Sahag Petrosian, who answered pro se, was given notice of this conference, and failed to appear.

**III.**

The United States has filed an Opposition (Docket No. 5) to the Motion to Deposit Surplus Funds. [**3] In its papers, the United States claims that on August 17, 1992, "a lien arose in favor of the United States against all property and rights to property of the Petrosians" such that after the foreclosure by Foxborough Bank of the Petrosian's mortgage "the United States may be entitled to receive the surplus proceeds" from the mortgage sale. See Docket No. 5 at 2. The position of the United States was somewhat clarified at the Case Management Conference of October 22, 1999, as being an acknowledgment that Foxborough's attorneys are entitled to a reasonable fee that reduces the amount left for some claimant but a contention that a share going to the United States should be the last share reduced for this purpose. This hard-and-fast position of the United States makes it impossible for the stakeholder to settle and pay without running a risk that it would later be hauled into expensive litigation and possibly double payment in the final outcome. It is no answer to this dilemma that the United States also makes a concession of allocation of a share of the proceeds to Dorothy L. Petrosian, since her counsel contests the position of the United States regarding allocation of attorney [**4] fees. Thus, the effect of the position of the United States is that if the court allows Foxborough to interplead the entire amount over opposition by the United States, Foxborough must run the risk incident to the possibility that this or a higher court may later determine that the interpleader order was erroneous, that the United States should get it all and that if as a practical matter Foxborough could not recover amounts allowed to be paid to Dorothy L. Petrosian or others, then Foxborough would simply have to bear that duplicative loss. In other words, the United States says, in effect, that if any interim payments are made, with or without court order, Foxborough must bear the risk of double payment incident to uncertainty about the final outcome of this case.

In support of its position, counsel for the United States has called this court's attention, first, to an opinion that says that for the purpose of determining priority between a federal tax lien and a state-created lien, a court must treat the state lien as perfected only when it is choate, i.e., "when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." U.S. v. Equitable Life Assurance Society, 384 U.S. 323, 327-28, 16 L. Ed. 2d 593, 86 S. Ct. 1561 (1966). [**5] Predictably, then, the United States argues that it has priority over the allegedly inchoate state-created lien securing payment of Foxborough's attorney's fees and costs -- fees and costs generated by their representing Foxborough in contending that this court has equitable jurisdiction over the interpleader action and that this is the most appropriate way to resolve fairly the dispute among claimants and between them and the stakeholder. For the proposition that the state-created lien of fees and costs is inchoate, the United States cites also Nason v. Taylor, 351 Mass. 347, 221 N.E.2d 400

(1966) and U.S. [*174] v. Pioneer Am. Ins. Co., 374 U.S. 84, 88-92, 10 L. Ed. 2d 770, 83 S. Ct. 1651 (1963).

Although the cases cited by the United States remain good law, their proposed application to the facts of this case is awkward at best. Furthermore, the law of this circuit regarding interpled funds and attorney's fees and costs arising out of an interpleader action is quite clear. The general practice in this circuit is that "an interpleader fee is usually awarded out of the fund to compensate a totally disinterested stakeholder who has been, by reason of the possession of the [**6] fund, subjected to competing claims through no fault of his own." Ferber Co. v. Ondrick, 310 F.2d 462, 467 (1st Cir. 1962), cert. denied, 373 U.S. 911, 10 L. Ed. 2d 412, 83 S. Ct. 1300 (1963)(footnote omitted).

It is my present view, in the exercise of discretion, that Foxborough, as a stakeholder subjected to the conflicting claims of all of the defendants, should be allowed the benefit of an application of the customary practice in this circuit of conducting proceedings in the nature of interpleader, and that Foxborough should be allowed to claim reasonable compensation from the impleaded fund for reasonable attorney's fees and actual expenses incurred in seeking judicial instructions on how to dispose of the surplus foreclosure proceeds. See 310 F.2d at 467 & nn.5-6; Centex-Simpson Construction Co. v. Fidelity & Deposit Company of Maryland, 795 F. Supp. 35, 41-42 (D. Me. 1992). See also 7 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1719, at 629-30, 632-33 (2d ed. 1986).

To put the point most mildly, the court finds disquieting the hard-edged position of the United States. After all, [**7] the United States is, under our form of government, committed to liberty and justice for all. Thus, I am not persuaded that Foxborough should be prevented from being reimbursed for its fees and costs in invoking the equitable jurisdiction of this United States district court to conduct proceedings in the nature of interpleader for the purpose of protecting the legitimate interests of all the claimants and the stakeholder in these circumstances. The executive branch of the federal government may choose in its exercise of discretion to place firm limits on how much it does in efforts to resolve the matter without imposing on any claimant the necessity and burdens of legal proceedings in some state or federal forum to protect its legitimate interests in the stake held by the stakeholder. It does not follow that the executive branch exercise of discretion divests the judicial branch of jurisdiction to consider whether what has been done constitutes reasonable efforts sufficient to justify imposing a risk of double payment upon the stakeholder.

**IV.**

In these circumstances, I conclude that it is appropriate to make the Order recited below.

**ORDER**

For the foregoing reasons, [**8] it is ORDERED:

Without undertaking to rule at this time on entitlements to all or part of the funds proposed to be deposited in the registry of this court, the court allows the Motion to Deposit Surplus Funds (Docket No. 4) to the following extent only:

Foxborough Savings Bank is authorized to make a deposit in the registry of this court, within a reasonable time after this date and in a manner and on terms satisfying the requirements of the Administrative Office of the United States Courts and the Clerk of the United States District Court for the District of Massachusetts. This is not an Order that Foxborough deposit the sum of $ 83,693.49, and it is not an Order that Foxborough will lose no rights if instead it deposits a sum less than $ 83,693.49.

The court is not deciding at this time conflicting contentions that may depend [*175] upon the precise amount Foxborough chooses to deposit.

Robert E. Keeton

United States District Judge